UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                              Criminal No. 16-65 (JNE/FLN)

                Plaintiff,

          v.

                                        **REPORT AND**
Deuvontay Shelby Charles,                                          **RECOMMENDATION**

                Defendant.

_____

Laura Provinzino, Assistant United States Attorney, for Plaintiff.
Dan Gerdts for Defendant Deuvontay Shelby Charles.

_____

    **THIS MATTER** came before the undersigned United States Magistrate Judge on June 29, 2016 on Defendant Deuvontay Shelby Charles's pretrial motions. The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the Government entered fifteen exhibits into evidence and called Detective Michael Schantzen from the Anoka County Sheriff's Department as a witness. Charles introduced one exhibit into evidence.[1] For the reasons that follow, the Court recommends that Charles's motions be **GRANTED in part** and **DENIED in part**.

### I. THE INDICTMENT

    On March 7, 2016, a United States Grand Jury returned an indictment, charging Charles with four counts of sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a), (b)(1), (b)(2), (c), 1594(a), and 3559(e); four counts of sex trafficking by force, fraud, and coercion in violation of 18 U.S.C. §§ 1591(a), (b)(1), 1594(a), and 3559(e); twelve counts of production of child pornography

---

[1] The Government and Charles's exhibits and witness are outlined in an Exhibit and Witness List posted to CM/ECF. *See* ECF No. 37.

in violation of 18 U.S.C. §§ 2251(a), (e), and 3359(e); two counts of receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); and one count of committing a felony offense involving a minor when required to register as a sex offender in violation of 18 U.S.C. § 2260A.

## II. BACKGROUND

After discovering extensive conversations between her seventeen year old daughter—K.M.L.—and Charles on Facebook, K.M.L.'s mother went to speak with Detective Schantzen at the Anoka County Sheriff's Department.  K.M.L.'s mother showed Detective Schantzen the Facebook messages and gave him her daughter's account information so that he could continue to access K.M.L.'s Facebook account. Detective Schantzen then confirmed that Charles was trying to recruit K.M.L. to engage in prostitution and that Charles had similar conversations, and engaged in prostitution activities, with other minor females.

After interviewing A.M.C., another alleged minor victim, Detective Schantzen learned that Charles had also requested pornographic images from her, had sent pornographic images of himself to her, had engaged in sexual intercourse with her against her will, and had made her have sex with one of his friends for money.

## III. ANALYSIS

**A.     Alleged Violation of *Franks v. Delaware* (ECF No. 24)**

Charles seeks to suppress evidence obtained pursuant to a search warrant of himself and his alleged residence pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[2] *See* Mot. for Hearing, ECF

---

[2]
While Charles initially moved for a *Franks* hearing, he acknowledges in his supplemental brief that "the motion for a hearing pursuant to *Franks* probably has been rendered moot by the Government's presentation of evidence specifically addressing the motion at the hearing on 29 June 2016. The Court nonetheless still must resolve whether Defendant has carried the burden of demonstrating the *Franks*

No. 24; Gov't Ex. 2.

If a probable cause determination was based on an affidavit that contained false statements made knowingly and intentionally or with reckless disregard for the truth, the search warrant is invalid unless probable cause exists when reconstructed without such statements. *Franks*, 438 U.S. at 171. To show a violation pursuant to *Franks*, a defendant must show first that "a false statement knowingly and intentionally, or with reckless disregard for the truth was included in the affidavit." *United States v. Humphreys*, 982 F.2d 254, 259 n.2 (8th Cir. 1992). If a defendant makes this showing, he must then also prove "that the affidavit's remaining content is insufficient to establish probable cause." *Id.*

Charles asserts that in Detective Schantzen's affidavit in support of the warrant to search Charles's person and alleged residence, Detective Schantzen:

> affirmatively averred that he had reviewed Facebook messages from Defendant with other individuals that included the address of the target house. Detective Schantzen failed to mention, however, that the Facebook messages he referred to were many months old. Detective Schantzen also asserted that the Defendant was a registered sex offender and that he previously had registered at addresses in both North Dakota and Minnesota; but he failed to inform the neutral and detached magistrate that Defendant's then current registered address, and all his previous registered addresses, and even the address on Defendant's driver's license were not the address he was asking authorization to search. . . . All of these assertions and omissions were either intentional, or made in reckless disregard for the truth, therefore violating the rule announced in *Franks v. Delaware*. They also were material because they directly affected an objective assessment of where Defendant resided, which was essential to a finding of probable cause to search the residence.

ECF No. 24 at 2. After reviewing the search warrant, the Court concludes that there was no material falsity included in Detective Schantzen's affidavit. The issue is whether or not there was probable cause to believe that evidence of a crime would be found at the residence Detective Schantzen

---

violation." Def. Supp. Mem. 4, ECF No. 42. The Court agrees.

3

sought to search. Detective Schantzen attested that he had reviewed messages sent by Charles on K.M.L.'s Facebook account and then—pursuant to a warrant—on Charles's Facebook account, and discovered that Charles had "provided the address of 7xx Thomas Ave. N in north Minneapolis" to several people. Gov't Ex. 2. The fact that Charles might have also lived at other locations does not render Detective Schantzen's statement that he believed Charles lived at 7xx Thomas Avenue North and that evidence of a crime could be found there a false statement, nor does it amount to a reckless disregard of the truth. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (holding that probable cause means "there is a fair probability that contraband or evidence of a crime will be found in a particular place"); *see also* Gov't Ex. 14 (A.M.C. Statement, 20:00). Because the Court finds that Charles has not demonstrated that Detective Schantzen included a false statement in his affidavit, the Court concludes that Charles's allegation of a *Franks* violation is without merit.

**B.     Motion to Suppress Alleged Unlawful Search and Seizure Evidence (ECF No. 28)**

Charles moves to suppress evidence obtained during various searches and seizures, arguing that each search violated his Fourth Amendment rights. Mot. to Suppress Search and Seizure Evidence, ECF No. 28. All of the relevant searches in this case were conducted pursuant to search warrants. After a review of the applications in support of the warrants submitted by the Government, the Court concludes that each warrant is supported by probable cause and Charles's motion should be denied in its entirety. The Court first observes that Charles does not have standing to object to any information obtained from a search of K.M.L's Facebook or in messages he sent to K.M.L.'s Facebook account because he has no expectation of privacy in her account. *See Oliver v. United States,* 466 U.S. 170, 177 (1984)*, United States v. Douglas,* 744 F.3d 1065 (8th Cir. 2014). *See also Katz v. United States*, 369 U.S. 347, 351 (1967) (Harlan, J. concurring).

4

In his motion, Charles discusses the September 1, 2015 search of his alleged residence and his person. ECF No. 28. He also objects to the search of his cell phone after he was arrested. *Id.* For the reasons discussed above, the Government's submission of the affidavit and executed warrant for the person of Deuvontay Shelby Charles and for premises of 7xx Thomas Ave North is supported by probable cause. Gov't Ex. 2. The warrant explicitly requests permission to search:

1. Computers, including CPU, tablets, or laptops capable of accessing the internet and storing digital video or photos[.]
2. Computer hardware and storage devices to include external hard drives, thumb drives, media cards (SD cards), cd's and dvd's.
3. Electronic devices including, but not limited to, *cell phones*, *smart phones*, cameras, video recorders or other devices that are capable of accessing the internet and storing images or video whether in an analog or digital format.

*Id.* (emphasis added). Additionally, in his affidavit Detective Schantzen described how he met with K.M.L.'s mother who showed him her seventeen year old daughter's Facebook account. *Id.* Messages exchanged between K.M.L. and Devountay Charles on Facebook led Detective Schantzen to believe that the Facebook users were involved in sex trafficking. *Id.*(The messages written by Devountay Charles included the phrases "You gone make a lot of money," "You could make 10,000 in one weekend boo if it's a good weekend," "If he fuck I want 50 from him."). Detective Schantzen also wrote that twice Devountay Charles wrote to K.M.L. to meet him at 7xx Thomas Ave North. *Id.* Detective Schantzen also attested that during his interview of K.M.L. on July 24, 2015, K.M.L. stated that she believed that Charles "was trying to get her to prostitute for him" and "confirmed that [Charles] was trying to collect $50 if she had sex with a boy." *Id.* Based on this information, Detective Schantzen obtained search warrants to search Devountay Charles's Facebook account and in comparing his image to Charles's known Minnesota driver's license photograph, identified him as Charles. *Id.* Detective Schantzen also confirmed that Charles's grandmother and grandfather reside at 7xx Thomas Ave North. *Id.* A search of Charles's Facebook account also revealed other

conversations with "several 14 to 15 year old females" as well as solicitations for pornographic images of minor females and pornographic images sent of himself to minor females. *Id.* Detective Schantzen learned that the service address on "several of the IP addresses that were used to sign in to Devountay Charles Facebook account . . . were leased to 7xx Thomas Ave North." *Id.* The Court concludes that Detective Schantzen included ample support in his affidavit for the belief that a crime had occurred, Charles had committed that crime, and evidence of that crime could be found at 7xx Thomas Ave North and in electronic devices including cell phones at that address. *Id.* The search warrant is therefore supported by probable cause.

The Court concludes that the warrant is supported by probable cause and authorizes law enforcement to search Charles's alleged residence, person, and cell phone after he was arrested. These searches comport with the Fourth Amendment and evidence obtained from these lawful searches need not be suppressed.

Charles also contests the search and seizure of his cell phone tracking information and cell phone records. ECF No. 28. The Court has reviewed the Anoka County Application and Search Warrant for Verizon Wireless information, signed on August 24, 2015 and concludes that it is supported by probable cause. Gov't Ex. 11. In his affidavit in support of the search warrant, Detective Schantzen attests to his meeting with K.M.L.'s mother, review of K.M.L.'s Facebook account and the messages Charles sent to her account, his interview with K.M.L., and his search of Charles's Facebook account. *Id.* Detective Schantzen asserted that in his experience and training "those who request and receive images of juveniles which are sexual in nature often keep or collect these images . . . [and] images deleted from electronic devices can likely be recovered using computer forensic and cellphone forensic software." *Id.* The affidavit supports a finding of probable cause to believe that Verizon Wireless records of Charles's phone number in order to locate the

device that was likely to contain digital forensic evidence was supported by probable cause. Therefore, the search of Charles's cell phone tracking information and cell phone records comports with the Fourth Amendment.

Finally, Charles asserts that searches of his Facebook accounts on July 15th and 30th as well as September 25th and October 29th, 2015 violated his Fourth Amendment rights. ECF No. 28. The Government submitted four Anoka County Applications and Search Warrants for Facebook information, signed on July 14, 2015,[3] July 30, 2015, September 29, 2015, and October 29, 2015. Gov't Exs. 7, 8, 9, and 10. Detective Schantzen included in his affidavit the messages that he reviewed from his conversation with K.M.L.'s mother and K.M.L.'s Facebook account as well as his conversation with K.M.L. *See supra*. These four affidavits support a finding of probable cause that evidence of a crime could be found in reviewing Charles's Facebook account. Therefore, the Court concludes that each of these warrants is supported by probable cause. Accordingly, these four searches of Charles's Facebook account did not violate the Fourth Amendment.

Charles also included an objection in his supplemental memorandum to the search of his Google Account. Def. Supp. Mem. 1–3, ECF No. 42. The Court concludes, however, that Anoka County Application and Search Warrant for Google Inc. information, signed on January 11, 2016 is supported by probable cause and this search was lawful. Gov't Ex. 12. In his affidavit in support of the warrant, Detective Schantzen reiterates that based on his conversation with K.M.L., her

---

[3]
    While Charles correctly argues that there is a clerical error requesting to search Charles's Facebook during a period of time in 2014 instead of 2015, this does not invalidate the search warrant. ECF No. 42 at 1–2; Gov't Ex. 7; *see also United States v. Leon*, 468 U.S. 897 (1984) (holding that the exclusionary rule does not apply to evidence that is discovered through the execution of a subsequently invalidated search warrant, so long as the officer's reliance on the warrant was objectively reasonable).

mother, a review of K.M.L.'s Facebook and Charles's Facebook accounts, an interview of A.M.C.

(another juvenile victim ascertained from reviewing Charles's Facebook account), and a search of

Charles's cell phone, Detective Schantzen believed further evidence of a crime could be found in

searching Charles's email accounts. The Court concludes that Detective Schantzen's affidavit

supports a finding of probable cause and the search of the Google Accounts was lawful and in

accordance with the Fourth Amendment.

Charles motion to suppress any evidence obtained during a search and seizure must be

denied.

**C.     Motion to Suppress Statement (ECF No. 29)**

Charles moves to suppress all statements he made during a law enforcement interrogation

while he was in custody at the Dakota County Jail on September 4, 2015. *See* Gov't Ex. 14 (Charles

Statement).

The Fifth Amendment ensures that no person "shall be compelled in any criminal case to be

a witness against himself." U.S. Const. amend. V. To safeguard the Fifth Amendment rights of a

person in custodial interrogation, the United States Supreme Court held in *Miranda v. Arizona* that

"an individual must be advised of the right to be free from compulsory self-incrimination, and the

right to the assistance of an attorney, any time a person is taken into custody for questioning."

*Miranda v. Arizona*, 384 U.S. 384, 444 (1966). A custodial interrogation is defined as "questioning

initiated by law enforcement officers after a person has been taken into custody or otherwise

deprived of his freedom in any significant way." *United States v. Flores-Sandoval*, 474 F.3d 1142,

1146 (8th Cir. 2007). As observed by the United States Supreme Court:

> Once warnings have been given, the subsequent procedure is clear. If the individual
> indicates in any manner, at any time prior to or during questioning, that he wishes to
> remain silent, the interrogation must cease. At this point he has shown that he intends

8

to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

*Michigan v. Mosley*, 423 U.S. 96, 100–01 (1975) (citing *Miranda*, 384 U.S. at 473–74).

There is no dispute that this was a custodial interrogation. *Miranda*, 384 U.S. at 444. At the time of the statements at issue, Charles was in custody at Dakota County Jail and was being questioned by Detective Schantzen, a law enforcement officer, conducting an investigation into Charles's possible criminal activity. Gov't Ex. 14 (Charles Statement at 1:52). However, a review of the record, including the testimony Detective Schantzen offered at the suppression hearing and the recording of the interview itself, shows that Detective Schantzen informed Charles of his rights, which Charles knowingly and voluntarily waived, before Detective Schantzen conducted the custodial interrogation. *Id.* at 2:44. Detective Schantzen further testified that the recording of the interview is accurate, that Charles did not appear to be impaired, that Charles was able to understand and answer questions, and that Detective Schantzen did not raise his voice, brandish a weapon, or make any promises during the interrogation. Charles did not request counsel or ask to terminate the interview at any point. *Id.* This is supported by a review of the recorded conversation submitted by the Government as well as Detective Schantzen's testimony. *Id.* The Court additionally observes that Charles has had prior contacts with law enforcement and mentioned that he was familiar with the procedure of being informed of his rights at the outset of the conversation with Schantzen. *Id.* at 2:12.

Charles statements during the interrogation were voluntarily made. His motion to suppress these statements must be denied.

**D.     Motion to Suppress Identification Evidence (ECF No. 27)**

Charles moves to suppress the single photo show up identification made by A.M.C. Mot. to Suppress Identification, ECF No. 27. A.M.C. was interviewed by Detective Schantzen at her home on September 1, 2015. Gov't Ex. 14 (A.M.C. Statement). During the interview, Detective Schantzen showed her Charles's Facebook profile picture, which she identified to be Charles. *Id.* Prior to being shown this photograph, she wrongfully identified a DMV photograph of Charles's brother as Charles and was told by Detective Schantzen that the individual in the DMV photograph was not Charles. *Id.*

Courts apply a two-part test when considering a due process challenge to an identification procedure. The first inquiry is whether "law enforcement officers use[d] an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012). If the identification procedure was indeed suggestive and unnecessary, then the second inquiry is whether the identification was nevertheless reliable under the totality of the circumstances. *Manson v. Brathwaite*, 432 U.S. 98, 106, 114 (1977). The identification will be considered reliable if it does not create a "substantial likelihood of misidentification." *Id.* When determining whether an identification is reliable, the Court considers the factors set out in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972), including: the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the time between the crime and the confrontation.

Although the Government attempts to characterize certain single-photographic "show-ups" as reliable "confirmatory photographs," the Court rejects any categorical approach to photographic identification procedures. Every motion to suppress identifications is a fact intensive inquiry that requires the Court to look at the totality of the circumstances surrounding each identification

procedure. The victim's familiarity with the subject of the photograph is one of many factors for the Court to consider when determining whether an identification is nevertheless reliable even if the witness has participated in an unduly suggestive identification procedure.

There is no question that the procedure used by Detective Schantzen here was an unduly suggestive identification procedure. Detective Schantzen showed only a single photograph to A.M.C. for her to identify Charles after informing her that the previous identification she made of a photograph of Charles's brother was incorrect. Gov't Ex. 14 (A.M.C. Statement).[4]

The court must next decide whether A.M.C.'s identification is nevertheless reliable, despite the unduly suggestive procedure. A.M.C. had only seen Charles in person for one day in November 2014.[5] Her opportunity to observe him was modest at best. *Id.* at 15:40. A.M.C. stated that Charles had heard that she had run away from home when she was fourteen years old[6] and Charles suggested

---

[4]     A single photo show up is always unduly suggestive. The court is more than mildly concerned that this detective has adopted it as a "standard investigative technique" to confirm the identity of the suspects. There may well be cases where the witness' familiarity with the suspect is subject to such overwhelming proof that the government takes no risk in utilizing a single photo show up to clarify who the witness is describing. That circumstance does nothing to diminish the unduly suggestive nature of the procedure. It simply means that applying the *Biggers* factors, the government's evidence on the issue of reliability is overwhelming. This is not that case. Here, the witness in question saw the defendant on only one or two occasions and nine months later was shown a single photograph of the defendant after mis-identifying a photo of another person as the defendant. To compound the problem the interrogating officer told the witness she had identified the wrong photo.

[5]     While A.M.C. may have also seen Charles at a Target in downtown Minneapolis, it is not clear when this meeting occurred. Gov't Ex. 14 (A.M.C. Statement at 41:36). A.M.C. also stated that she walked away from Charles and did not interact or have a conversation with him. *Id.* at 41:51.

[6]     A.M.C.'s date of birth is May 17, 2001. *Id.* at 00:25. In November 2014 she

that she come to his home. A.M.C. was driven to an apartment in Saint Paul to meet him. During this time, A.M.C. asserts that she was made to have vaginal and oral sex with Charles three times after he got her high and then she was forced to have sex with Charles's friend for money. *Id.* at 7:30, 8:45, and 11:40. This was the first time A.M.C. had ever engaged in sexual intercourse. *Id.* at 13:00. It was not clear to the court what these facts say about A.M.C.'s degree of attention, but the court finds it revealing that  A.M.C. stated that she would not be able to recognize Charles's friend that she was made to have sex with because she was so stoned. *Id.* at 14:20. Regarding the length of time between the encounter and the unduly suggestive show up, nine months had elapsed since A.M.C.'s November, 2014 encounter with Charles. She also stated that she has poor long term memory and is not good at recalling things that far back.  *Id.* at 21:15, which bears on the level of certainty demonstrated by the witness.  Finally, regarding the accuracy of the identification, the witness here, clearly identified a person as Charles, and was told so by the detective at the time of the unduly suggestive identification procedure.

A.M.C. received residential treatment soon after this November, 2014 encounter until July 2015. While there is evidence that she maintained a relationship with Charles electronically and frequently communicated with him over Facebook, this e-communication does not add to her ability to reliably identify him. *Id.* at 3:20. Indeed, A.M.C.'s identification of Charles is proven to be unreliable given her mistaken identification of Charles's brother as Charles. *Id.* at 24:38. Furthermore, her ability to identify Charles's Facebook profile picture after almost exclusively communicating via Facebook does not add to the reliability of her identification of Charles himself. At best this is evidence that A.M.C. was able to confirm the Facebook profile picture on the account.

―――――――――――

would have been thirteen years old.

It is also clear that A.M.C. was concerned about getting in trouble during her interview with Detective Schantzen. *Id.* at 17:24 ("I don't want to get in trouble for this"), 22:00 ("I've seen videos of prostitution online and it's usually the girls going to jail.").

Although there may be pornographic videos Charles took of himself and sent to A.M.C., none of those were offered in evidence, so it is impossible for the Court to determine whether or not they would add to A.M.C.'s ability to reliably identify Charles notwithstanding any unduly suggestive identification procedures. *Id.* at 29:15.

In light of the *Biggers* factors, as set forth above, the A.M.C.'s identification of Charles is not reliable and must be suppressed. Charles's motion to suppress A.M.C.'s identification of him must be granted.

**E.      Motion to Suppress Jail Calls (ECF No. 26)**

Charles seeks to suppress all of his recorded jail calls. Mot. to Suppress Electronic Surveillance Evidence, ECF No. 26. The Government opposes this motion.

It is not unlawful for law enforcement officials to "intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(c). The Eighth Circuit has held that a prisoner who is aware of a prison's policy to record and/or monitor all prisoner phone calls impliedly consents to such monitoring when he chooses to make a phone call. *See, e.g.*, *United States v. Lucas*, 499 F.3d 769, 780 (8th Cir. 2007); *United State v. Horr*, 963 F.2d 1124, 1126 (8th Cir. 1992).

In the present case, the Government introduced evidence regarding telephone calls made from Sherburne County Jail. In addition to executing the Tennessen Warning that any calls made from the jail facility would be recorded, Charles was also advised by a recorded warning prior to the free call he made, which the Government provided to the Court. *See* Gov't Exs. 3 and 14 (Jail Call).

Charles impliedly consented to the recording of his jail calls when he chose to use the phone despite clear warnings that the calls would be recorded. Having impliedly consented to having his calls recorded from Sherburne County jail, Charles has no objectively reasonable expectation of privacy in those calls. *See United States v. Eggleston*, 165 F.3d 624, 626 (8th Cir. 1999) ("If someone agrees that the police may listen to his conversations and may record them, all reasonable expectation of privacy is lost, and there is no legitimate reason to think that the recordings, like any other evidence lawfully discovered, would not be admissible."). Charles's motion to suppress his Sherburne County jail calls must therefore be denied.

However, the Government has only put forward evidence to prove that Charles did not have an expectation of privacy in his Sherburne County jail calls. To the extent that the Government seeks to introduce any jail calls or recorded statements made by Charles from any facility other than Sherburne County jail in its case in chief, including from the Moose Lake facility, the government has not met its burden to show their admissibility. To the extent Charles's motion to suppress extends to any calls other than those made from the Sherburne County Jail, the motion must be granted. *See* Gov't Supp. Mem. 13, ECF No. 46.

## IV. RECOMMENDATION

Based upon the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Charles's motion to suppress evidence and for a *Franks* hearing (ECF No. 24) be **DENIED**;

2.   Charles's motion to suppress search and seizure evidence (ECF No. 28) be **DENIED**;

3.   Charles's motion to suppress all statements (ECF No. 29) be **DENIED**.

4.   Charles's motion to suppress identification evidence (ECF No. 27) be **GRANTED**.

5.      Charles's motion to suppress electronic surveillance evidence (ECF No. 26) be **DENIED** to the extent that he seeks to suppress any calls made while he was incarcerated at Sherburne County Jail. With respect to any calls made from any other facility, the motion should be **GRANTED**.


DATED: August 11, 2016                                  *s/Franklin L. Noel*
                                                        FRANKLIN L. NOEL
                                                        United States Magistrate Judge



Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 25, 2016**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **August 25, 2016** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.