UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                                  Criminal No. 16-065 (JNE/FLN)
                                                    ORDER

DEUVONTAY SHELBY CHARLES,

    Defendant.

Defendant Deuvontay Shelby Charles ("Charles") filed five dispositive pretrial motions pursuant to Federal Rule of Criminal Procedure 12(b): Motion for Hearing Pursuant to *Franks v. Delaware* [Dkt. No. 24] ("*Franks* Motion"), Motion to Suppress Electronic Surveillance Evidence [Dkt. No. 26] ("Phone Calls Motion"), Motion to Suppress Identifications [Dkt. No. 27] ("Identifications Motion"), Motion to Suppress Search and Seizure Evidence [Dkt. No. 28] ("Search Motion"), and Motion to Suppress Statements of Defendant [Dkt. No. 29] ("Statements Motion"). After holding a hearing on these motions on June 29, 2016, and ordering supplemental briefing, the Honorable Franklin L. Noel, United States Magistrate Judge, issued a Report and Recommendation dated August 11, 2016 [Dkt. No. 51]. In that Report and Recommendation, Judge Noel recommended that Charles's *Franks* Motion be denied, Phone Calls Motion be denied in part and granted in part, Identifications Motion be granted, Search Motion be denied, and Statements Motion be denied.

Both Charles and the Government filed objections to the Report and Recommendation, each focusing on different aspects. Charles objected to the recommended denials of his *Franks* Motion and Search Motion. Dkt. No. 54, at 1. The Government objected to the recommended grant of the Identifications Motion and partial grant of the Phone Calls Motion. Dkt. No. 55, at 1. The Court has conducted a de novo review of the record. *See* D. Minn. L.R. 72.2(b). Based

on that review, and for the reasons that follow, the Court declines to adopt certain aspects of the Report and Recommendation's reasoning and recommendations as discussed below, particularly with respect to the Identifications Motion and Phone Calls Motion. The Court adopts the Report and Recommendation in all other respects.

    A. *Franks* Motion

Charles challenges the September 1, 2015 warrant pursuant to which law enforcement searched the premises of 7xx Thomas Ave. N., Minneapolis, Minnesota, as well as his person. Dkt. No. 42, at 3-9. This warrant was entered into evidence at the June 29 hearing as Government Exhibit 2 ("Ex. 2 Warrant"). *See id.* at 3. Charles maintains that the affidavit supporting the Ex. 2 Warrant, which was written and signed by Detective Michael Schantzen of the Anoka County Sheriff's Office, contained material omissions of fact in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). *Franks* provides that if, at a hearing to challenge the truthfulness of factual statements in an affidavit supporting a warrant, an "allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded . . . ." *Id.* at 156. The Report and Recommendation concluded that Charles's request for a *Franks* hearing was mooted by the testimony of Det. Schantzen at the June 29 hearing and determined that there was no material falsehood in the affidavit.

Charles objects that the Report and Recommendation focused on whether the affidavit contained affirmative statements that were false, as opposed to analyzing whether the affidavit contained material omissions. Dkt. No. 54, at 3. In fact, it is clear from the Report and Recommendation that Magistrate Judge Noel considered Charles's argument that there were

2

material omissions and appropriately concluded that there were not. The Report and Recommendation quoted nearly the entirety of Charles's *Franks* Motion, which alleged that the affidavit "failed to mention" or "failed to inform" the Ex. 2 Warrant's issuing judge of several facts and that these omissions created a misleading impression about where Charles resided, indicating Judge Noel's recognition of Charles's omissions argument. In any event, based on its de novo review of the record, the Court agrees that the preponderance of the evidence does not prove a *Franks* violation. Charles "had to show (1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986) (citations omitted). The gist of Charles's argument is that whether as an affirmative representation or as an implicit premise, the affidavit gave the misleading impression that Charles resided at 7xx Thomas Ave. N., and that had the affidavit included certain omitted facts, a neutral magistrate could not have concluded that Charles stayed at 7xx Thomas Ave. N. more than occasionally. Furthermore, Charles argues, a fully informed magistrate could not have found probable cause to believe that Charles or the warrant's anticipated evidence would be at 7xx Thomas Ave. at the time of the search. *See* Dkt. No. 42, at 7-8.

The Court finds that even considering the information that Charles asserts was omitted, *see* Dkt. No. 42, at 5-7, the record would have supported finding probable cause for the Ex. 2 Warrant.[1] The affidavit mentioned that Charles had a registered address in North Dakota as well as in Minnesota. Charles argues that Det. Schantzen should have given more information about

---

[1] "On a motion to suppress, a district court should not make a de novo determination of probable cause; rather, the decision to issue the warrant is to be upheld if supported by substantial evidence in the record." *Reivich*, 793 F.2d at 959.

3

the other addresses to which Charles had some connection. Det. Schantzen explained at the hearing why he did not include more information about other addresses. *See* June 29, 2016 Hr'g Tr. 30-37, 46-47. The Court finds that there has been no showing he "omitted the facts with the intent to mislead or in reckless disregard of the omissions' misleading effect." *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004) (citing *Reivich*, 793 F.2d at 961). Charles also argues that Det. Schantzen should have mentioned the age of some of the information that the affidavit cited to establish connections between Charles and Minnesota, specifically to 7xx Thomas Ave. and nearby. Even if, considering Charles's apparent mobility, some of the cited information was arguably becoming somewhat dated—for example, information showing that Charles's Facebook account was accessed[2] via IP addresses leased to the 7xx Thomas Ave. N. dated from late July 2015, about a month before the date of the affidavit—more recent information was also cited. For example, the affidavit cited cell phone tower data indicating that Charles's cell phone had been located near 7xx Thomas Ave. N. at nighttime. In conclusion, even with more information about Charles's connections to additional locations and more context for the facts asserted in the affidavit, the issuing judge could have concluded that Charles sometimes stayed at the 7xx Thomas Ave. N. location, that he had been staying there recently, and that there was a fair probability that he and the anticipated evidence would be there when the warrant was executed. *See Ketzeback*, 358 F.3d at 991 (quoting the standard for probable cause set out in *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Because the affidavit would have been

---

[2] When discussing Charles's Facebook activity in this pretrial order, the Court for simplicity refers to actions or communications conducted via the "Deuvontay Charlez" accounts as Charles's actions through his account. The Court is aware of testimony that Charles technically had two separate accounts, June 29, 2016 Hr'g Tr. 109-10, and further notes Charles's suggestion through a line of questioning at the hearing that he did not always necessarily control his Facebook accounts, *id.* at 86. The Court understands that Charles may seek to pursue these points at trial.

sufficient to support a finding of probable cause if the omitted facts had been included, the *Franks* Motion is denied. *See Ketzeback*, 358 F.3d at 991; *Reivich*, 793 F.2d at 961.

    **B. Search Motion**

Charles moved to suppress evidence obtained pursuant to numerous searches and seizures, including of his person and residence pursuant to the Ex. 2 Warrant,[3] of his Facebook and Google accounts, and the searches of his cell phones after he was arrested.  Dkt. No. 28.  In his objections to the Report and Recommendation with respect to Dkt. No. 28, Charles incorporates by reference the arguments he made in his post-hearing briefing.  Dkt. No. 54, at 1 n.1 (referring to Dkt. No. 42).

Charles seeks to suppress the evidence obtained pursuant to a July 14, 2015 warrant to search and seize records in his Facebook account ("Ex. 7 Warrant").  At the June 29 hearing, Det. Schantzen admitted that in applying for that warrant, he "accidentally put 2014 instead of 2015," thus requesting and ultimately receiving records from June 1, 2014 through July 8, 2014, even though he intended to request 2015 records; after receiving the records and realizing his mistake, he set them aside and did not use them.  June 29, 2016 Hr'g Tr. 27.  He then applied for and received a similar warrant with a corrected date range, Government Exhibit 8, dated July 30, 2015 ("Ex. 8 Warrant").  The Report and Recommendation concluded that the *Leon* exception to the exclusionary rule applied to records received pursuant to this warrant.  Dkt. No. 51, at 7 n.3 (referring to *United States v. Leon*, 468 U.S. 897 (1984)).  The Court does not reach that question.  Instead, it determines that Charles's suppression request with regard to the Ex. 7 Warrant is moot because law enforcement put the 2014 records aside and did not use them and

---

[3] In his initial motion (Dkt. No. 28), Charles also moved to suppress evidence of cell phone tracking and cell phone records.  Charles did not object to the Report and Recommendation's findings on that portion of his motion.  *See* Dkt. No. 51, at 6-7.

5

because the Government presumably does not seek to use them at trial.  If the Court's assumption about the Government's intention is incorrect, the Government is directed to inform the Court within 7 days of the filing of this Order.

Charles argues that the Ex. 8 Warrant is constitutionally overbroad.  Dkt. No. 42, at 2.  The affidavit in support of the Ex. 8 Warrant discussed, among other things, the officer's review of messages exchanged on Facebook between Charles and a juvenile girl that appeared to be evidence of sex trafficking, and information about a second girl who was allegedly a sex trafficking victim in a separate police investigation of Charles and who "appeared to be communicating with Deuvontay Charles via facebook."  Gov't Ex. 8.  The Court finds that the Ex. 8 Warrant was not overbroad.  "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (citation and internal quotation marks omitted).  Moreover, "[a] warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the time that the warrant is issued." *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999).  Based on the affidavit Det. Schantzen submitted in support of the application, he obtained a warrant to search for categories of information (*e.g.*, status updates, Wall postings, comments, and messages) relating to a specific Facebook account associated with Charles for a specified, fairly narrow period of time close in time to the Facebook activity that the officer had reviewed, on the basis that there would be evidence of sex trafficking of a minor.  Viewing the affidavit and warrant in a practical, commonsense manner, and drawing reasonable inferences from the totality of the circumstances—which included Det. Schantzen's representations that he was aware of communications on Facebook between Charles and two minors in connection with sex trafficking—it was a fair inference that evidence of sex trafficking would be found in the

requested records, and the warrant was not facially overbroad. *See United States v. Alexander*, 574 F.3d 484, 489-90 (8th Cir. 2009) (rejecting an overbreadth argument with respect to a warrant to search defendant's computer for evidence of child pornography).

Charles's suppression arguments with respect to three other warrants (Government Exhibits 9, 10, and 12) rely on his arguments with respect to Ex. 7 Warrant and Ex. 8 Warrant, so they fail too. *See* Dkt. No. 42, at 3.

Charles also challenges the search of his cell phones after the execution of the Ex. 2 Warrant, on the grounds that this warrant authorized only the seizure of cell phones but not searches of any seized phones.[4]  This argument is meritless.  As the Report and Recommendation noted, the Ex. 2 Warrant explicitly authorized searching for and seizing "[e]lectronic devices including . . . cell phones, smart phones . . . or other devices that are capable of accessing the internet and storing images or video whether in an analog or digital format," and it further granted "[a]uthority to conduct forensic examinations of any electronic evidence seized in a controlled environment, that being the Anoka County Sheriff's Office." Charles argues that the warrant's grant of this authority merely echoes Federal Rule of Criminal Procedure 41(e)(2)(B), which permits such later examination *to the extent authorized* by the warrant.  But this was a state warrant, not a federal warrant, and seen in full context, it is clear that the warrant was granting authority to search, not simply parroting a federal procedural rule. The affidavit supporting the warrant stated that Det. Schantzen, a certified cell phone forensic examiner, "kn[ew] through his training and experience that facebook can only be accessed on an electronic device with access to the internet," like the cell phones and smart phones that the warrant authorized law enforcement to seize and later examine.  He also stated that based on his

---

[4] Charles's other objections with regard to the Ex. 2 Warrant are fully addressed above.

experience, Det. Schantzen expected that Charles's electronic devices would likely have saved or collected images of child pornography and would have information relating to conversations that Charles had had with the minor whom Det. Schantzen had interviewed.  The affidavit reiterated that Det. Schantzen sought authority to conduct forensic examinations of any electronic devices seized pursuant to the warrant, thus reinforcing the conclusion that he sought and received authorization through the Ex. 2 Warrant to search Charles's cell phones for the types of images and messages referenced in the affidavit.  *See, e.g.*, *United States v. Mehilove*, No. 11-CR-219 (SRN/SER), 2011 WL 4842553, at *7 (D. Minn. Sept. 15, 2011), *adopted by* 2011 WL 4842445 (D. Minn. Oct. 12, 2011).

Therefore, despite Charles's thorough briefing of these numerous objections, the Court denies the Search Motion.

### C.  Identifications Motion

Charles moves to suppress any in-court identifications of him by a witness referred to as A.M.C., including any reference to A.M.C.'s out-of-court identification of a photograph of Charles, on the grounds that the out-of-court identification procedure was impermissibly suggestive and irreparably corrupting.  Dkt. No. 27; Dkt. No. 42, at 14-18.  This Identifications Motion stems from an interview conducted by Det. Schantzen of A.M.C., an alleged juvenile victim of Charles's sex trafficking.  The Report and Recommendation recommended granting the Identification Motion.  The Government objected.  Dkt. No. 55, at 1-12.

The Government submitted evidence of the following facts, taken from the testimony of Det. Schantzen, copies of certain Facebook records (Government Exhibit 6), and an audio-

recording of the interview of A.M.C. (part of Government Exhibit 14).[5] Det. Schantzen initially reviewed some communications between A.M.C. and Charles on Facebook, including private messages that led him to believe that Charles had solicited A.M.C. to be involved in sex trafficking. He then conducted an interview of A.M.C, in which she described her interactions with Charles. A.M.C. said that in November 2014, she visited Charles at an apartment in St. Paul and, over the course of about a day and a half, Charles and A.M.C. had sexual relations three times and Charles received money when A.M.C. had sexual intercourse with his friend. The Report and Recommendation noted that A.M.C. "got high" during at least a portion of this day and a half, but the record does not suggest that A.M.C. was impaired during the entire visit. The interview also described extensive communications and messaging between A.M.C. and Charles over the intervening year. In one example, in Government Exhibit 6, in a post on her own Facebook wall, A.M.C. referenced Charles as "a loyal man," and he "liked" her post in reply. In the interview, A.M.C. also said that Charles sent her images and videos of himself. A.M.C. also updated her Facebook "cover photo" to show a picture of Charles, the same picture that had been his Facebook profile picture. This is the photograph that, during her interview, when shown it and asked to confirm that he was the person to whom she had been referring, A.M.C. identified as depicting Charles, after first misidentifying a different photograph of Charles's brother.

As an initial point, to the extent that Charles moves to suppress any reference to the out-of-court identification of him, that motion is moot. The Government represented during the hearing that it would not rely on or use that out-of-court identification at trial. June 29, 2016

---

[5] Many of the facts discussed were presented in hearsay form. The Court presumes for purposes of this pretrial motion that the Government will be able to establish the facts through direct examination of A.M.C. or otherwise admissible evidence.

9

Hr'g Tr. 4-5. That representation does not resolve, however, Charles's motion to prevent any in-court identification of him by A.M.C.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside" on the ground that the pretrial identification was constitutionally flawed "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Omar*, 786 F.3d 1104, 1108 (8th Cir. 2015) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). When analyzing whether a witness should be allowed to identify a defendant in court, after having first identified that defendant under circumstances that have been challenged, the question is whether despite the suggestive confrontation, there are sufficient indicia of reliability that the witness could accurately identify the defendant. *Neil v. Biggers*, 409 U.S. 188, 199 (1972) (characterizing as "the central question" "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive"); *see also United States v. Scott*, No. 15-3461, 2016 WL 4151218, at *4 (8th Cir. Aug. 5, 2016) ("Suppression will follow only where the evidence is unreliable."). Courts apply a two-step analysis, first asking whether the pretrial identification procedure was "suggestive and unnecessary," and second, examining "whether the identification technique created a 'substantial likelihood of misidentification.'" *Omar*, 786 F.3d at 1108 (citing *Perry v. New Hampshire*, 132 S. Ct. 716, 723-25 (2012)). "An in-court identification is not tainted by a suggestive photographic display 'if a sufficient basis for courtroom identification independent of any improper photo display exists.'" *United States v. Bangert*, 645 F.2d 1297, 1304 (8th Cir. 1981) (quoting *United States v. Mears*, 614 F.2d 1175, 1177 (8th Cir. 1980)); *see also United States v. Patterson*, 20 F.3d 801, 806 (8th Cir. 1994) ("[C]onfrontation evidence is admissible if, despite

10

the suggestiveness of a single-photograph display, the independent reliability of the evidence can be established."). The factors to consider in evaluating the reliability of an in-court identification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Omar*, 786 F.3d at 1108 (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)).

In this case, assuming that the identification procedure during the A.M.C. interview was impermissibly suggestive, there are sufficient indicia of reliability to allow A.M.C. to identify Charles in court. A.M.C. had the opportunity to view Charles in-person and intimately over a day-and-a-half period. Even if at some points A.M.C.'s attention was clouded, there is no basis to believe that she was high during the entire time including before she "got high," and the intimacy and length of this encounter, as she has described it, lend credibility to her ability to accurately recollect Charles's features. *See Biggers*, 409 U.S. 200-01 (describing a 15-minute-to-30-minute encounter, during which the witness was raped, as "spen[ding] a considerable period of time with her assailant" in circumstances that made her "no casual observer"). In addition, as she asserted in her interview, A.M.C. interacted with Charles extensively online through Facebook and was therefore familiar with his appearance through many photographs and videos linked to his Facebook account usage. Some corroboration of these interactions can be seen in the record, such as A.M.C.'s Facebook post in Government Exhibit 6 "[s]hout[ing] out to" Charles "for being a loyal man," which Charles then "liked." In her interview, A.M.C. was also able to describe changes that she had noticed in Charles's hairstyle over time. Although the length of time that passed between A.M.C.'s in-person encounter with Charles and the "showup" during her interview was significant, their ongoing virtual interactions set these facts apart from

11

other cases where a victim is asked many months after the crime to identify her alleged assailant. In addition, Det. Schantzen testified that once A.M.C. saw Charles's Facebook profile photograph, she identified him readily. The fact that A.M.C. was familiar with Charles through their extended encounter in November 2014 and extensive online interactions—which included opportunities to view photographs and videos of Charles—outweighs any concerns about the suggestiveness of how A.M.C. was shown that photograph. *See Omar*, 786 F.3d at 1109-10. Although the fact that she first misidentified the photograph of Charles's brother weighs against her reliability, the Court finds that viewing the totality of the circumstances, there are sufficient indicia of reliability to allow A.M.C. to identify Charles in court, subject to cross-examination. *See Perry*, 132 S. Ct. at 725. The law "protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Id.* at 723.

### D. Phone Calls Motion

Charles also moves to suppress evidence of intercepted telephone conversations in which he was a participant. Dkt. No. 26. At the June 29 hearing, the Government submitted evidence regarding phone calls that Charles made from Sherburne County Jail, including a written notice and recorded warning at the beginning of a phone call he initiated, which notified him that his calls were subject to recording. The Report and Recommendation concluded that based on the evidence relating to the Sherburne County Jail, Charles's motion as to his recorded calls from that facility should be denied, but that the Government had not carried its burden of proof with regard to any other recorded calls and that the Phone Calls Motion should therefore be granted as

to any other calls. Dkt. No. 51, at 13-14. The Government objected to the recommendation of a partial grant of the motion. Dkt. No. 55, at 13-14.

At the hearing, Det. Schantzen testified that he had heard the Sherburne County Jail recorded warning and in his experience, he is aware that a similar advisement is "regularly provided" on phone calls from other facilities. June 29, 2016 Hr'g Tr. 61-62. In post-hearing briefing, the Government submitted a recording of a call by Charles from the Moose Lake Correctional Facility that included a recorded warning similar to the recording in Government Exhibit 14. Based on this supplemental submission, under the same legal analysis applied in the Report and Recommendation, the Court finds that the Phone Calls Motion should be denied in its entirety without prejudice. This ruling is subject to the caveat that for any recorded phone calls that it seeks to admit into evidence, the Government will have the burden of establishing a foundation at trial similar to that which it established as to the Sherburne County Jail calls.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Charles's Motion for Hearing Pursuant to *Franks v. Delaware* [Dkt. No. 24] is DENIED.

2. Charles's Motion to Suppress Electronic Surveillance Evidence [Dkt. No. 26] is DENIED WITHOUT PREJUDICE.

3. Charles's Motion to Suppress Identifications [Dkt. No. 27] is DENIED AS MOOT as to the out-of-court identification evidence and DENIED as to in-court evidence.

4. Charles's Motion to Suppress Search and Seizure Evidence [Dkt. No. 28] is DENIED AS MOOT as to Government Exhibit 7 and otherwise is DENIED.

5. Charles's Motion to Suppress Statements of Defendant [Dkt. No. 29] is DENIED.

Dated: October 12, 2016                             s/ Joan N. Ericksen
                                                    JOAN N. ERICKSEN
                                                    United States District Judge